UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

HOMESITE INSURANCE COMPANY OF
NEW YORK,

Index No.:  1:21-cv-00772 (FJS/DJS)

Plaintiff,

-against-

DEQUAN GREENE and LATRISHA GREENE,
Individually and d/b/a HARMONY AND FRIENDS
 DAYCARE, and CARLOS FIGUEROA, as an
interested party,

Defendants.

--------------------------------------------------------------x

## COMPLAINT

Plaintiff HOMESITE INSURANCE COMPANY OF NEW YORK ("Homesite"), by and through its attorneys, WADE CLARK MULCAHY LLP, alleges the following as its Complaint for Declaratory Judgment:

1.      This is a declaratory judgment action arising out of a personal injury case in which Homesite seeks a declaration that it does not owe DEQUAN GREENE ("D. Greene") and LATRISHA GREENE ("L. Greene"), Individually and d/b/a HARMONY AND FRIENDS DAYCARE ("Daycare") defense or indemnity for any and all claims arising out of and/or connected with the lawsuit captioned: *Carlos Figuero v. Dequan Greene, et al.*, State of New York Supreme Court, County of Schenectady, Index No.: 2019-623 ("Lawsuit").   The basis of Homesite's complaint is that Homesite's homeowners policy does not provide coverage because the underlying plaintiff's claimed damages, which are the basis for the Lawsuit, arise out of and/or are connected to D. Greene and L. Greene utilizing the property located at 2734 Broadway,

Schenectady, NY 12306 ("Property") as a daycare, which are not the type of damages for which the Homesite homeowners policy provides coverage.

## THE PARTIES

2.     Homesite is a corporation with a principal place of business address of 1 Federal Street, Boston, MA 02081 that is authorized to issue insurance policies in New York.

3.     Upon information and belief, at all times relevant, defendant D. Greene was and is a resident of the County of Schenectady, State of New York.

4.     Upon information and belief, at all times relevant, defendant L. Greene was and is a resident of the County of Schenectady, State of New York.

5.     At all times relevant, upon information and belief, defendants D. Greene and L. Greene, individually and d/b/a Daycare owned and/or operated and/or occupied of a place of business located in the County of Schenectady and State of New York.

6.     At all times relevant, defendant Carlos Figueroa ("Figueroa") in an interested party in this declaratory judgment action as the plaintiff in the underlying personal injury lawsuit.  Upon information and belief, at all times relevant, Figueroa was and a resident in Schenectady and the State of New York.

## JURISDICTION AND VENUE

7.     Personal jurisdiction over D. Greene is proper because, based upon information and belief, D. Greene is a citizen of New York.

8.     Personal jurisdiction over L. Greene is proper because, based upon information and belief, L. Greene is a citizen of New York.

9.     Personal jurisdiction over Figueroa is proper because, based upon information and belief, Figueroa is a citizen of New York.

10.     Venue is proper under 28 U.S.C. § 1391 because the Homesite policy at issue in this action was issued to New York citizens.

11.     Subject matter jurisdiction is based upon 28 U.S.C. § 1332 and 28 U.S.C. § 2201 because the action involves citizens of different states and the amount in controversy exceeds the sum of $75,000.

12.     An actual controversy exists between the parties regarding their respective rights and obligations under the relevant Homesite policy of insurance.

## FACTUAL BACKGROUND

### *The Policy*

13.     Homesite issued homeowners policy # 35510476 to D. Greene and L. Greene with effective dates of August 17, 2018 to August 17, 2019 ("Policy").  *See* Policy, attached as **Exhibit A**.

14.     The Policy's Insured Location is listed as 2734 Broadway, Schenectady, NY 12306, a/k/a the Property.

15.     The Policy's Declarations page lists the Description of the Dwelling as "1903 Vinyl siding, Multi family, Primary residence".

16.     Daycare is not listed as an insured on the Policy.

### *The Underlying Lawsuit*

17.     On or about March 15, 2019, Figueroa commenced the Lawsuit against D. Greene and L. Greene, individually and d/b/a Daycare.  *See* Lawsuit, attached as **Exhibit B**.

18.     The First Cause of Action is asserted against D. Greene.  *See* **Exhibit B**, pars. 5-14.

19.     In this cause of action, it is alleged, on or about January 25, 2019, Figueroa was lawfully upon the premises of D. Greene located at 2734 Broadway, Schenectady, NY, a/k/a Property.  *See* **Exhibit B**, par. 6.

20.     It was alleged that the defendant was solely responsible for keeping the front steps and/or stairs, and all adjacent areas of the Property shoveled, salted and free from defective, hazardous and dangerous conditions.  *See* **Exhibit B**, par. 8.

21.     On January 25, 2019, Figueroa was lawfully upon the Property, when solely as a result of the slippery, dangerous, hazardous, and defective condition of the front steps and/or stairs, and without any negligence on the part of Figueroa, Figueroa was caused to be precipitated to the ground, resulting in personal injuries. *See* **Exhibit B**, par. 10.

22.     The Second Cause of Action is asserted against L. Greene.  *See* **Exhibit B**, pars. 15-24.

23.     In this cause of action, it is alleged, on or about January 25, 2019, Figueroa was lawfully on the premises of L. Greene, a/k/a the Property.  *See* **Exhibit B**, par. 16.

24.    It was alleged that the defendant was solely responsible for keeping the front steps and/or stairs, and all adjacent areas of the Property shoveled, salted and free from defective, hazardous and dangerous conditions.  *See* **Exhibit B**, par. 18.

25.    On January 25, 2019, Figueroa was lawfully upon the Property, when solely as a result of the slippery, dangerous, hazardous, and defective condition of the front steps and/or stairs, and without any negligence on the part of Figueroa, Figueroa was caused to be precipitated to the ground, resulting in personal injuries. *See* **Exhibit B**, par. 20.

26.    The Third Cause of Action is asserted against D. Greene and L. Greene d/b/a as Daycare.  *See* **Exhibit B**, par. 25-34.

27.    In this cause of action, it is alleged that on January 25, 2019, defendants owned, maintained and/or controlled the Property.  *See* **Exhibit B**, par. 27.

28.    The defendants, through their agents, servants and/or employees, were solely responsible for keeping the front steps and/or stairs, and all adjacent areas of the Property shoveled, salted, and free from defective, hazardous and dangerous conditions.  *See* **Exhibit B**, par. 28.

29.    On January 25, 2019, Figueroa was lawfully upon the Property, when solely as a result of the slippery, dangerous, hazardous, and defective condition of the front steps and/or stairs, and without any negligence on the part of Figueroa, Figueroa was caused to be precipitated to the ground, resulting in personal injuries.  *See* **Exhibit B**, par. 30.

### *D. Greene and L. Greene's Answer*

30.    On about April 23, 2019, the defendants D. Greene and L. Greene, individually, and d/b/a Daycare, answered Figueroa's complaint. *See* Defendants' Answer, attached as **Exhibit C**.

31.    In their answer, it was admitted that D. Greene and L. Greene were residents of the County of Schenectady. *See* **Exhibit C**.

32.    In the first cause of action, it was also admitted that, on or about January 25, 2019, Figueroa was lawfully on the Property. *See* **Exhibit C**.

33.    The rest of the allegations were denied. *See* **Exhibit C**.

### *Lawsuit's Discovery*

### *Figueroa's Deposition*

34.    On or about June 18, 2020, Figueroa was deposed in connection with the Lawsuit.[1] *See* Figueroa Deposition, attached as **Exhibit D**.

35.    On the date of the incident, Figueroa testified that his fiancé, Krystal Cruz ("Cruz") had picked him up from dialysis, and they went to the defendants' premises to donate children's toys. *See* **Exhibit D**.

36.    Specifically, Figueroa recalled that he went to "Harmony & Friends Daycare", but he could not recall the address of the defendants' premises. *See* **Exhibit D**.

37.    Figueroa testified that they were not only donating toys but were also going to look at the daycare as an option for their son. *See* **Exhibit D**.

---

[1] Homesite only came into possession of the Plaintiff's transcript on or about April 23, 2021.

38.     Specifically, Figueroa testified, in part, as follows:

*Q.  Okay.  And where did that fall take place?*

*A.  I don't know the exact address, but it was Harmony And Friends Daycare.*

\*        \*        \*

*Q.  And what was your reason for going to Harmony And Friends Daycare that day?*

*A.  Me and my fiancée was [sic] donating a desk and some toys to her daycare and we were also researching the daycare to put my son J▮▮▮▮ in it.*

\*        \*        \*

*Q.  How did you come to find out about Harmony And Friends Daycare?*

*A.  My fiancée found it on Facebook.*

*Q.  Do you know who ran Harmony And Friends Daycare?*

*A.  No.  My fiancée spoke to whoever she spoke to.  I was just accompanying her, to check out the place.*

*Q.  Okay.  So it sounds like Krystal [Cruz], your fiancée, talked to somebody affiliated with Harmony And Friends Daycare, set up a time for your guys to go and donate some toys and a desk and check it out for your son?  Is that what you were saying?*

*A.  Correct.*

*See* **Exhibit D**, pgs. 23-24.

39.     Figueroa testified, while they were in the defendants' premises, he recalled seeing approximately three (3) or four (4) children in the home and no adults other than L. Greene.  *See* **Exhibit D**.

40.     After briefly discussing the daycare with L. Greene, Figueroa and Cruz left with their son.  *See* **Exhibit D**.

41.     Figueroa also testified, in part, during his deposition, as follows:

*Q. All right. So you walk up the stairs, holding the desk and Krystal is walking up, holding your son and the toys. And what happens when you get to the top of the stairs?*

*A. We knock on the door and she answers it, she says hello, she greets us, we walk inside, we give her the stuff. She's there with her daughter and 3 other children and we stood there – my wife stood there talking to her 5 minutes. And then we decided to go. … .*

*   *   *

*Q. Okay. And you keep referring to a woman. Did you ever find out her name?*

*A. No, I never knew her name.*

*   *   *

*Q. Okay. And when you went inside, you said there was her daughter and 3 other children there?*

*A. Yes. Like 3 to 4 children.*

*Q. Were those her children or children she was watching or –*

*A. Those was children. She was watching kids. She told us – the conversation was mostly with my fiancée, and she told her "These are children that I watch."*

*Q. Okay. Do you know if there were any other adults there?*

*A. No.*

*See* **Exhibit D**, pgs. 31-33.

42.     Figueroa testified, that on his way down the stairs, he slipped on an icy step, which resulted in his claimed injuries. *See* **Exhibit D**.

*L Greene Deposition*

43.     On or about August 12, 2020, L. Greene[2] and D. Greene[3] were deposed in connection with the Lawsuit. *See* L. Greene Deposition, attached as **Exhibit E**; and D. Greene Deposition, attached as **Exhibit F**.

---

[2] Homesite only came into possession of L. Greene's transcript on or about April 23, 2021.
[3] Homesite only came into possession of D. Greene's transcript on or about April 23, 2021.

44.    With respect to L. Greene, L. Greene testified that she resided at 2734 Broadway in Schenectady, New York, a/k/a the Property, with her husband, D. Greene, and their three (3) children.  *See* **Exhibit E**.

45.    They have been residing at this premises for almost four (4) years.  *See* **Exhibit E**.

46.    L. Greene testified that she did not and had not ever operated a daycare in her home. *See* **Exhibit E**.

47.    L. Greene testified that she was not currently employed.  *See* **Exhibit E**.

48.    She said she has thought about opening a daycare but had not actually opened or ran one.  *See* **Exhibit E**.

49.    She also testified that she did not currently have a license to run a daycare and she did not have a license to run one in 2019.  *See* **Exhibit E**.

50.    With respect to "Harmony & Friends", L. Greene testified that this was a not-for-profit organization in which she was involved.  *See* **Exhibit E**.

51.    The organization provided giveaways to community members and it was registered with the IRS approximately a month prior to L. Greene's deposition.  *See* **Exhibit E**.

52.    L. Greene testified that the organization was not registered in 2019.  *See* **Exhibit E**.

53.    Specifically, L. Greene testified, in part:

*Q.  Are you familiar with an entity or an organization known as Harmony and Friends?*

*A. There's – well, the Harmony and Friends that the – she's referring to or he is referring to?  There's no Harmony and Friends Daycare.  There's only a non profit in Schenectady.*

*Q. And what is the name of that non profit?*

*A. Harmony and Friends.*

*Q. Is it a corporation?*

*A. No.  It was just a non profit organization that does giveaways in the community, like donations to the children.*

*Q. And is that just the name of it, Harmony and Friends?*

*A. Yes.*

*Q. Okay.  And that's the full name?*

*A. Yes.*

*Q. Okay.  Are you connected to Harmony and Friends in any way?*

*A. Yes.  I do all the giveaways every weekend.*

*Q. Do you also collect the items?*

*A. Myself and other community members, yes.*

*Q. Do you have a formal title with Harmony and Friends?*

*A. No.*

*Q. Okay what is the address for Harmony and Friends?*

*A. The – there's no location because we just pick up – they drop the items off.  Like some people drop the items off to my home, and then I deliver them in my car.*

*Q. Okay.  How do people know to drop items off at your home?*

*A. Because they contact me or they contact anybody's that part of the organization.*

*       *       *

*Q. Okay.  Is this non profit organization, is it registered anywhere?*

*A. It's registered but it's fairly new.*

*Q. When was it registered?*

*     *     *

A.  Less than a month.  We just started doing all our stuff.

Q.  And where did you register?

A.  It's registered with the IRS.

Q.  So it was not registered back in January of 2019, is that right?

A.  Correct.  It's only been up for a month if that.

Q.  Harmony and Friends has only be up for a month?

A.  Yes.  The organization just got started within a month.

Q.  A month ago today?

A.  Less than a month.

Q.  Okay.  Harmony and Friends was not in existence back in January 2019?

A.  No.  It may been promoted like it was coming soon, but no, it was not.

*     *     *

Q.  Okay.  And when did you create the – or withdrawn.  Who created Harmony and Friends' Facebook page?

A.  I set up the Facebook page.

Q.  And when did you do that?

A.  Shortly after the portion was created through the IRS.

Q.  So within the last month?

A.  Correct.

Q.  And there was no organization known as Harmony and Friends back in January of 2019, is that what your testimony is?

A.  It could have been promoted, but it was not organized yet until this month.

Q.  Okay.  I understand that it was formally organized or registered, but did you promote an organization known as Harmony and Friends back in January of 2019?

A.  As I stated, it was promoted as coming, yes.

Q.  As coming.  Did you make any collections of items back in January of 2019?

A.  Yes.  That's how receive our donations to do the giveaways, yes.

Q.  Okay. And that was back in January of 2019, correct?

                    *        *        *

A.  I'm sorry, yes.

Q.  Okay.  And back in January of 2019, Ms. Greene, did you provide childcare services at 2734 Broadway in Schenectady?

A.  No.

Q.  Have you ever provided childcare services at that location?

A.  No.

Q.  Were you a licensed daycare provider back in January of 2019?

A.  No.

Q.  Have you ever been a licensed daycare provided?

A.  No.

                    *        *        *

Q.  Okay.  And did you meet Mr. Figuero on another occasion?

A.  The next time I seen [sic] Mr. Figuero was when they came to my home.

Q.  And when was that?

A.  In January of 2019.

Q.  And why were they coming to your home on that occasion?

A.  She was dropping off toys.

Q.  And why was she dropping off toys?

A.  To the promoted organization of Harmony and Friends.

                    *        *        *

*Q. ... . When Mr. Figuero and Ms. Cruz arrived at your house at about 10:30 on the morning of January 25th, you had your two daughter, your two oldest daughter at home with you, if that right?*

*A. That's correct.*

*Q. Did you have any other children at the house when they arrived?*

*A. No.*

*Q. And you testified earlier that you weren't providing any daycare services for any other children back in January of 2019?*

*A. No.*

*Q. Did Mr. Figuero or Mr. Cruz have any discussions with you about providing daycare or babysitting services for their child back in January of 2019?*

*A. I never ever had a conversation with Mr. Figuero, and Ms. Cruz did discuss with me if I opened up the daycare – but we didn't know each other, so it didn't go anywhere.*

*Q. Okay did she think that you were going to open up a daycare? Was that the impression you got?*

*A. She wanted to know, yes, if I was going to be opening up a daycare, that's correct.*

*Q. Okay. And did you ever tell her that you would be opening up a daycare?*

*A. If we continue with getting license to have a daycare, yes, that was definitely a goal of mine.*

*See* **Exhibit E**, pgs. 7-14; 23-25.

54.    L. Greene also testified that she was in the process of starting a business "Ebenezer

Dream Care Center LLC", which would offer pre-school services, but this was not up and running.

*See* **Exhibit D**.

55.    L. Greene also testified, in part, as follows:

*Q. Are you familiar with an organization known as Ebenezer Dream Care Center, LLC?*

*A. Yes.*

*Q. And what is that?*

*A.  It's a children's center.  It's not open.  It's coming.*

*Q.  Is it a daycare center?*

*A.  It's a children's center, not daycare.  It would be a preschool and Mommy and Me classes.*

*Q.  Are you affiliated with that children's center at all?*

*A.  Yes, it's mine.*

*Q.  Okay.  And when was that LLC formed?*

*A.  I don't know the exact date.  I would have to look at my phone to tell you.*

*Q.  Okay.  Was that in existence back in January of 2019?*

*A.  No.*

*See* **Exhibit E**, pgs. 41-42

56.     On the date of the incident, L. Greene testified that Figueroa and Cruz came to her premises to donate children's toys.  *See* **Exhibit E**.

57.     L. Greene testified that when Figueroa and Cruz arrived, L. Greene was inside with her two (2) children.  *See* **Exhibit E**.

58.     L. Greene testified that Figueroa and Cruz subsequently left.  *See* **Exhibit E**.

59.     L. Greene was first made aware of the incident later that day.  *See* **Exhibit E**.

*D. Greene Deposition*

60.     With respect to D. Greene, D. Greene testified that he resided at 2734 Broadway in Schenectady, New York, a/k/a the Property, with his wife, L. Greene, and their three (3) children. *See* **Exhibit F**.

61.     D. Greene was currently employed by International Paper in Scotia, New York. *See* **Exhibit F**.

62.    D. Greene advised that he first learned of the incident from his wife.  *See* **Exhibit F**.

*Cruz Deposition*

63.    On or about September 2, 2020,[4] Cruz was deposed in connection with the Lawsuit. *See* Cruz Deposition, attached as **Exhibit G**.

64.    Cruz was engaged to Figueroa.  *See* **Exhibit G**.

65.    Cruz testified on the date of the incident, she and Figueroa and their child went to defendants' premises to donate toys and check out the daycare.  *See* **Exhibit G**.

66.    Specifically, Cruz testified, in part:

*Q.  Okay. So let's talk about January 25th, 2019.  Do you remember that date?*

*A.  Yes.*

*Q.  Why do you remember that date?*

*A.  We went to the daycare.*

*Q.  And who is "we"?*

*A.  Me and Carlos.  And we had ▮▮▮ with us.*

*Q.  Okay.  And what daycare were you going to see?*

*A.  Latrisha's daycare.  We were donating toys and possibly enrolling him in daycare.*

*Q.  Okay.  And when you "Latrisha", are you referring to Latrisha Greene?*

*A.  Yes.*

*Q.  Okay.  How do you know that you went to visit the daycare on January 25th, 2019?*

---

[4] Homesite only came into possession of Cruz's transcript on or about April 16, 2021.

*A. Because after he got hurt, I had messaged her on Facebook and I told her he got hurt because her steps were super icy.*

*Q. Okay. But what I mean, is there something specific that occurred on that day, what makes you remember you went to her house on January 25th, 2019?*

*A. We went – well, me and Carlos went to the daycare to bring toys over, and while we were leaving, he had slipped and fell.*

See **Exhibit G**, pgs. 14-15.

67.    Additionally, Cruz testified that when she entered the defendants' premises, there was a discussion with L. Greene regarding the daycare she was planning to open. *See* **Exhibit G**.

68.    Cruz also testified that she recalled seeing small children, under the age of five (5), at the home and no adults other than L. Greene present. *See* **Exhibit G**.

69.    After briefly discussing the daycare and dropping off the toys, Figueroa and Cruz left with their son. *See* **Exhibit G**.

70.    L. Greene also testified, in part:

*Q. Okay. And after you got out of the car, where did you go?*

*A. I had my* [sic] *messaged her that were outside, and she said okay, she was going to come open the door, and we made our way up into the daycare?*

\*        \*        \*

*Q. Okay. And what happened when you made your way up to the top of the stairs?*

*A. She let us in, we stood in the doorway, we spoke, we looked around the daycare from the doorway, she took the items. And that was it.*

\*        \*        \*

*Q. And who was having the conversation with Mrs. Greene, you or Carlos or both?*

*A. We both were.*

*Q. Okay. And what were you talking about with her?*

*A.  About the daycare, how many kids she had – you know – hours of service, meals and all of that stuff.*

*Q.  Do you if she had a daycare that was up and running on that date?*

*A.  I don't know about her having the daycare.  She advertised it.  And also there were kids in the house when we got there.*

*Q.  Do you know whose kids were in the house?*

*A.  I don't know.*

*    *    *

*Q.  Now, when you talked with her, did she tell you that she was going to be starting a daycare or – when you say she advertised it, what do you mean?*

*A.  That she has a daycare, so she, I guess, promoting her business – you know – to get parents to sign their kids up.*

*Q.  Okay.  And were you interested in the daycare?*

*A.  At first I was, until Carlos got hurt.*

*Q.  Okay.  And what was Carlos saying to Mrs. Greene while you were there?*

*A.  He was just asking – you know – basic questions, the price – you know – the hours.*

*See* **Exhibit G**, pgs. 20, 22-24.

71.    Cruz testified on the way down the steps, she recalled Figueroa telling her that he slipped and his left elbow popped when he grabbed the railing.  *See* **Exhibit G**.

*Discovery Responses*

72.    On or about August 7, 2019, D. Greene and L. Greene, individually and d/b/a Daycare produced responses to Figueroa's discovery demands.  *See* Defendants' Discovery Responses, dated August 7, 2019, attached as **Exhibit H**.

73.    In their response to Figueroa's Notice for Discovery and Inspection, the defendants stated that there were no parents and/or other individuals who dropped off and/or picked up their children at the Property on the date of the incident.  *See* **Exhibit H**.

74.    Additionally, the defendants stated that they did not have copies of any d/b/a records for the Daycare.  *See* **Exhibit H**.

75.    On or about or July 3, 2019, Figueroa provided responses to the defendants' Demand for Bill of Particulars.  *See* Figueroa's Discovery Responses, dated July 3, 2019, attached as **Exhibit I**.

76.    Subsequently, on or about February 23, 2021, Figueroa provided Supplemental Verified Bill of Particulars.  *See* Figueroa's Supplemental Discovery Responses, dated February 23, 2021, attached as **Exhibit J**.

77.    In these supplemental responses, Figueroa responded that the incident occurred on the exterior steps leading to/from 2734 Broadway, Schenectady, NY 12306, a/k/a the Property. *See* **Exhibit J**.

78.    Additionally, Figueroa's supplemental responses refer to the defendants' Property as "Harmony and Friends Daycare".  *See* **Exhibit J**.

79.    Specifically, with respect to the defendants' acts or omissions that Figueroa claims constituted negligence on the part of the defendants, Figueroa responded, in part, as follow:

*4.  The defendants, through their agents, servants and/or employees, were negligent, through omission or commission, as follows:*

*a. in negligently and carelessly failing to inspect and maintain the steps in and about the area of defendants' premises known as Harmony and Friends Daycare, 2734 Broadway, Schenectady, NY 12306;*

*b. in allowing ice to build up on the steps in and about defendants' premises known as Harmony and Friends Daycare, 2734 Broadway, Schenectady, NY 12306;*

*c. in failing to properly and promptly remove the icy buildup on the steps in and about the area of defendants' premises known as Harmony and Friends Daycare, 2734 Broadway, Schenectady, NY 12306;*

*d. in failing to have salt and/or sand placed on the steps in and about defendants' premises known as Harmony and Friends Daycare, 2734 Broadway, Schenectady, NY 12306;*

*See* **Exhibit J**.

80.    Additionally, when asked to identify statutes or regulations or ordinances defendants allegedly violated, Figueroa responded "Plaintiff refers defendants to New York State Child Day Care Regulations [Section] 417.5(a)". *See* **Exhibit J**.

81.    When asked to set forth a statement regarding whether the defendants had actual or constructive notice of the alleged dangerous condition complained in the Lawsuit, Figueroa responded, in part:

*Actual notice was notice.  Plaintiff spoke to the owners of the daycare about the hazardous condition when he and his fiancé arrived.*

*See* **Exhibit J**.

### *Daycare Services*

82.    Based upon information and belief, when asked about the Daycare referenced in the Lawsuit, L. Greene confirmed that she was getting a license to operate a home daycare, but, at the time of the incident, she was watching two (2) children, but not as part of a daycare.

83.     Based upon information and belief, L. Greene also advised that she was watching these children from October or November 2018 to February 2019.

84.     Based upon information and belief, L. Greene advised that the children's parents were not paying her to watch their children, and any payments would be subsidized by the county.

85.     Based upon information and belief, L. Greene also advised that she was advertising for open enrollment for the daycare, but she had not taken any applications.

*Homesite's Response*

86.     Homesite assigned defense counsel to defend D. Greene and L. Greene, individually and d/b/a Daycare in the Lawsuit, pursuant to a reservation of rights.  *See* April 18, 2019 ROR Letter, attached as **Exhibit K**.

87.     Subsequently, on or about June 24, 2021, Homesite issued a disclaimer letter advising that while Homesite would continue to defend D. Greene and L. Greene, individually and d/b/a Daycare in the Lawsuit, Homesite was disclaiming coverage to D. Greene and L. Greene, individually and d/b/a Daycare for the Lawsuit. *See* Homesite June 24, 2021 Disclaimer Letter, attached as **Exhibit L**.

## COUNT I

88.     Homesite repeats and reiterates every allegation hereto made in this complaint in paragraphs designated "1" through "87" inclusive, with the same force and effect as if set forth more particularly at length.

89.     The Policy's Homeowners 3 – Special Form (HO 00 03 05 11 (2010)) states, in part:

*Agreement*

*We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.*

90.    The Policy's Homeowners 3 – Special Form, Section II – Liability Coverages, A. Coverage E – Personal Liability (HO 00 03 05 11 (2010)), as amended by the Special Provisions – New York Endorsement (HA 01 31 NY 11 16 (2014)), section states, in part:

> *If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:*
>
> > *1.  Pay up to our limit of liability for the damages for which an "insured" is legally liable.  Damages include prejudgment interest awarded against an "insured"; and*
> >
> > *2.  Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.*

91.    The "to which this coverage applies" language is a condition precedent to coverage under the Policy.

92.    Accordingly, as a condition precedent to coverage, the insureds carry the burden of establishing that the Policy's coverage "applies" to the damages being claimed in the Lawsuit.

93.    The Policy is a homeowners policy.

94.    The Policy's declarations page lists the description of the Property as, *inter alia*, "Primary residence".

95.    Based upon information and belief, the Property was being utilized as a daycare.

96.    Based upon information and belief, Figueroa's claimed damages arise out of and/or are connected to the Property operating as a daycare, as opposed to a primary residence.

97.    Figueroa's claimed damages are not the types of damages for which coverage under the Policy applies.

98.    Accordingly, the Policy would not provide coverage for the Lawsuit on this basis.

**WHEREFORE**, Homesite respectfully demands judgment against D. Greene and L. Greene, individually and d/b/a Daycare for:

a.    A declaration that Homesite does not owe D. Greene and L. Greene, individually and d/b/a Daycare a defense in respect of the Lawsuit;

b.    A declaration that Homesite does not owe D. Greene and L. Greene, individually and d/b/a Daycare indemnity in respect of the Lawsuit;

c.    Interests, costs and disbursements of this action; and/or

d.    Such other, further and different relief as this Court deems just and proper.

## <u>COUNT II</u>

99.    Homesite repeats and reiterates every allegation hereto made in this complaint in paragraphs designated "1" through "98" inclusive, with the same force and effect as if set forth more particularly at length.

100.    The Policy's Homeowners 3 – Special Form, Section II – Liability Coverages, A. Coverage E – Personal Liability (HO 00 03 05 11 (2010)) section, as amended by the Special Provisions – New York Endorsement (HA 01 31 NY 11 16 (2014)) section, states, in part:

> *If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:*

1.  *Pay up to our limits of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and*
2.  *Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate.*

101.   The Policy's Homeowners 3 – Special Form (HO 00 03 05 11 (2010)) defines "insured" as:

*5. "Insured" means:*

*a. You and residents of your household who are:*

*(1) Your relatives; or*
*(2) Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;*

*b. A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:*

*(1) 24 and your relative; or*
*(2) 21 and in your care or the care of a resident of your household who is your relative; or*

*c. Under Section II:*

*(1) With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person described in 5.a. or b. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or*

*(2) With respect to a "motor vehicle" to which this policy applies:*

*(a) Persons while engaged in your employ or that of any person described in 5.a. or b.; or*
*(b) Other persons using the vehicle on an "insured location" with your consent.*

*Under both Sections I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".*

102.   Under this wording, subject to the Policy's other terms, conditions, and endorsements, the Policy only provides coverage for an "insured".

103.   The Policy was issued to D. Greene and L. Greene.

104.   The Policy was not issued to Daycare.

105.   Daycare does not constitute an "insured", as that term is defined by the Policy.

106.   Accordingly, the Policy does not provide coverage to D. Green and L. Greene d/b/a Daycare for the Lawsuit on this basis.

**WHEREFORE**, Homesite respectfully demands judgment against D. Green and L. Greene d/b/a Daycare for:

a.   A declaration that Homesite does not owe D. Green and L. Greene d/b/a Daycare a defense in respect of the Lawsuit;

b.   A declaration that Homesite does not owe D. Green and L. Greene d/b/a Daycare indemnity in respect of the Lawsuit;

c.   Interests, costs and disbursements of this action; and/or

d.   Such other, further and different relief as this Court deems just and proper.

## COUNT III

107.   Homesite repeats and reiterates every allegation hereto made in this complaint in paragraphs designated "1" through "106" inclusive, with the same force and effect as if set forth more particularly at length.

108.   The Policy's E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others section states that Coverage E and F do not apply to the following:

*2. "Business"*

*a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".*

*This Exclusion E.2. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".*

*b. This Exclusion E.2. does not apply to:*

*(1) The rental or holding for rental of an "insured location";*

*(a) On an occasional basis if used only as a residence;*
*(b) In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or*
*(c) In part, as an office, school, studio or private garage; and*

*(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;*

109.    The Policy's Special Provisions – New York (HA 01 31 NY 11 16) defines "business" as follows:

*3. "Business" means:*

*a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or*

*b. Any other activity engaged in for money or other compensation, except the following:*

*(1) One or more activities, not described in (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;*

*(2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;*

*(3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or*

*(4) The rendering of home day care services to a relative of an "insured";*

*c. The lease of land, buildings, structures or personal property.*

110.    The Policy's Homeowners 3 – Special Form (HO 00 03 05 11 (2010)) defines "insured location" as:

*6. "Insured location" means:*

*a. The "residence premises";*

*b. The part of other premises, other structures and grounds used by you as a residence; and*

> *(1) Which is shown in the Declarations; or*
> *(2) Which is acquired by you during the policy period for your use as a residence;*

*c. Any premises used by you in connection with a premises described in a. and b. above;*

*d. Any part of a premises:*

> *(1) Not owned by an "insured"; and*
> *(2) Where an "insured" is temporarily residing;*

*e. Vacant land, other than farm land, owned by or rented to an "insured";*

*f. Land owned by or rented to an "insured" on which a one-, two-, three- or four-family dwelling is being built as a residence for an "insured";*

*g. Individual or family cemetery plots or burial vaults of an "insured"; or*

*h. Any part of a premises occasionally rented to an "insured" for other than "business" use.*

111.    Under this wording, the Policy does not provide coverage for damages arising out of or in connection with a business conducted from the Property.

112.    Based upon information and belief, the Property was being utilized as a daycare.

113.    Figueroa's claimed damages arise out of and/or are connected to the Property operating as a daycare, as opposed to a primary residence.

114.    The Policy's Business Exclusion acts as a bar to coverage.

115.    Accordingly, the Policy does not provide coverage for the Lawsuit on this basis.

**WHEREFORE**, Homesite respectfully demands judgment against D. Greene and L. Greene, individually and d/b/a Daycare for:

a.    A declaration that Homesite does not owe D. Greene and L. Greene, individually and d/b/a Daycare a defense in respect of the Lawsuit;

b.    A declaration that Homesite does not owe D. Greene and L. Greene, individually and d/b/a Daycare indemnity in respect of the Lawsuit;

c.    Interests, costs and disbursements of this action; and/or

d.    Such other, further and different relief as this Court deems just and proper.

## <u>COUNT IV</u>

116.    Homesite repeats and reiterates every allegation hereto made in this complaint in paragraphs designated "1" through "115" inclusive, with the same force and effect as if set forth more particularly at length.

117.    The Policy's E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others section states that Coverage E and F do not apply to the following:

*3. Professional Services*

> *"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;*

118.   Under this wording, the Policy does not provide coverage for damages arising out of the rendering of or failure to render professional services.

119.   Upon information and belief, the Property was being utilized as a daycare.

120.   Upon information and belief, Figueroa's claimed damages arise out of and/or are connected to the Property operating as a daycare, as opposed to a primary residence.

121.   The Policy's Professional Services Exclusion acts as a bar to coverage.

122.   Accordingly, the Policy does not provide coverage for the Lawsuit on this basis.

**WHEREFORE**, Homesite respectfully demands judgment against D. Greene and L. Greene, individually and d/b/a Daycare for:

a.      A declaration that Homesite does not owe D. Greene and L. Greene, individually and d/b/a Daycare a defense in respect of the Lawsuit;

b.      A declaration that Homesite does not owe D. Greene and L. Greene, individually and d/b/a Daycare indemnity in respect of the Lawsuit;

c.      Interests, costs and disbursements of this action; and/or

d.      Such other, further and different relief as this Court deems just and proper.

Dated:  New York, NY
        July 7, 2021

                                        WADE CLARK MULCAHY LLP


                                        */s/ Robert J. Cosgrove*

                                        _____
                                        Robert J. Cosgrove, Esq.
                                        *Attorneys for Homesite*
                                        180 Maiden Lane, Suite 901
                                        New York, New York 11038
                                        267.239.5526
                                        267.565.1236 (fax)